# SWEETENER USERS ASSOCIATION

ONE MASSACHUSETTS AVE. NW • SUITE 800 • WASHINGTON, DC 20001 • (202) 842-2345 • (202) 408-7763 FAX

April 29, 2016

| | |
|---|---|
| The Honorable Penny Pritzker | The Honorable Tom Vilsack |
| Secretary | Secretary |
| U.S. Department of Commerce | U.S. Department of Agriculture |
| 1401 Constitution Avenue, NW | 1400 Independence Avenue, SW |
| Washington, DC 20230 | Washington, DC 20250 |

Dear Secretary Pritzker & Secretary Vilsack:

Published news articles have stated that there may be attempts to re-negotiate the suspension agreements between the United States and Mexico, which arose from anti-dumping and countervailing duty cases filed by the U.S. sugar industry in 2014.  The Sweetener Users Association (SUA) strongly advocates such re-negotiations as a potential remedy to the harm that the suspension agreements in their current form have levied on industrial sugar users and cane refiners.  We strongly urge that our government make it a priority of any re-negotiation to improve outcomes for these two negatively impacted sectors.

Inadequate supplies of raw cane sugar have been among the principal causes of dissatisfaction with the current agreements.  Although SUA was highly critical of the suspension agreements – and remains so – we acknowledge that as a practical matter, a negotiated settlement of some type now constitutes the status quo.  However, because this same settlement has led to short supplies of raw sugar, any changes should be designed with a view to restoring adequate supplies at reasonable prices.

The distortions inherent in the suspension agreements are being exacerbated by current marketplace trends toward a higher demand for cane sugar and a lower demand for beet sugar.  This trend is likely to accelerate in coming months and years as more companies respond to consumer demand for products that are not genetically engineered (GE).  Just this month, USDA statistics showed that compared to a year ago, deliveries of cane sugar in the U.S. market are up 5% while deliveries of beet sugar are down 7%.

SUA emphasizes the value our members place on both the domestic beet and cane production industries.  Moreover, it is clear that all GE crops on the market today are safe, including GE sugar beets.  But current demand trends are what they are, and if government policies artificially restrict supplies of the product for which demand is growing, the adverse impacts will fall on food and beverage manufacturers and ultimately on the consumers of their products.

We respectfully suggest the following principles that should apply to any new agreements or modifications to existing agreements:

1. **The United States must not compromise its sovereign right to establish and increase the tariff rate quotas (TRQs) for raw or refined sugar or sugar-containing products.** Both the establishment and allocation of these TRQs are matters of U.S. domestic law as well as international obligations.

2. **Sugar trade policy should at minimum ensure that the U.S. has adequate supplies of sugar available year round.** SUA has long advocated maintenance of a 15.5% stocks-to-use ratio, and that minimum level of stocks is even more critical now that we have new limits placed on sugar imports from Mexico.  Indeed, in a managed trade environment, there may be a need for a higher ratio than was historically the case.

3. **The current mix of 47% raw and 53% refined sugar imports in the suspension agreements needs to be re-examined and adjusted.**  We currently have available insufficient import flows of raw cane sugar to adequately supply U.S. cane refineries.  The changes now occurring in the U.S. sugar market that are increasing demand for cane sugar only makes this problem more urgent.

4. **The reference prices in the current agreements constitute a serious problem and should be changed.**  The current reference prices circumvent the intent of Congress by establishing higher minimum prices in the U.S. market than those prescribed by law.  In addition, the reference prices have distorted marketplace supplies by creating a strong incentive for Mexico to sell as much refined sugar as possible at the higher of the two reference prices.  Instead, the prices for refined and "other sugar" should be adjusted downward so that the minimum *delivered* price for "other sugar" is approximately equal to the forfeiture equivalent for U.S. raw cane sugar, while the reference price for refined sugar is approximately at the forfeiture equivalent for U.S. refined beet sugar, again on an average delivered basis.  Such a minimum-pricing arrangement would ensure that Mexican sugar did not undercut the impact of the U.S. loan program but, equally, did not constitute an extra-legal price support increase, as the current reference prices do.

Finally, SUA respectfully requests that industrial sugar users be consulted by your Department in the event that any discussions with Mexico take place.  Our members are the main customers for domestic and imported sugar and employ approximately 600,000 Americans.  Our voices deserve to be heard.

                                    Sincerely,

                                    Perry Cerminara
                                    Chairman